D.L., E.L., and I.L., a Minor, by her Father and Mother and Next Friends, D.L. and E.L., Plaintiffs,

v.

The WAUKEE COMMUNITY SCHOOL DISTRICT and Heartland Area Education Agency 11, Dr. Barbara Rankin (in her individual and official capacity), Monica McKevitt (in her individual and official capacity), Deb Snider (in her individual and official capacity), Kindra Sweeney (in her individual and official capacity), Roxanne Cumings (in her individual and official capacity), Jason Sanders (in his individual and official capacity), and Mirranda Krohn (in her individual and official capacity), Defendants.

No. 4:07–cv–00458.

United States District Court, S.D. Iowa, Central Division.

Sept. 26, 2008.

---

Thad J. Collins, Matthew G. Novak, Pickens Barnes & Abernathy, Cedar Rapids, IA, Beth E. Hansen, Swisher & Cohrt, PLC, Waterloo, IA, for Defendants.

Jeffrey S. Carter, Jeff Carter Law Office, Bruce H. Stoltze, Stoltze & Updegraff PC, Des Moines, IA, for Plaintiffs.

## ORDER ON MOTION TO DISMISS

ROBERT W. PRATT, Chief Judge.

Before the Court is a Motion to Dismiss (Clerk's No. 15), filed on February 29, 2008 by Defendants Heartland Area Education Agency 11 ("Heartland"), Dr. Barbara Rankin ("Rankin"), and Monica McKevitt ("McKevitt"). On the same date, the Waukee Community School District ("Waukee School"), Patti Brinkmeyer ("Brinkmeyer"), Deb Snider ("Snider"), Kindra Sweeney ("Sweeney"), Roxanne Cumings ("Cumings"), Jason Sanders ("Sanders"), and Mirranda Krohn ("Krohn") filed a Joinder in the Motion to Dismiss. Clerk's No. 16. After receiving two extensions of time, Plaintiffs, D.L., E.L., and I.L. (collectively "Plaintiffs") filed a resistance to the Motion to Dismiss on April 24, 2008. Clerk's No. 21. Heartland, Rankin, and McKevitt filed a Reply on May 6, 2008 (Clerk's No. 30), and amended the Reply on May 20, 2008 (Clerk's No. 35).[1] After receiving an extension of time, Waukee School, Brinkmeyer, Snider, Sweeney, Cumings, Sanders, and Krohn filed a Reply on May 20, 2008. Clerk's No. 36. The matter is fully submitted.

## I. FACTUAL BACKGROUND

Plaintiffs filed a Complaint in the above-captioned action on October 4, 2007. Clerk's No. 1. Plaintiffs filed an Amended Complaint and Jury Demand on January 25, 2008. Clerk's No. 2. The Amended Complaint alleges that I.L. is the minor child of D.L. and E.L. Am. Compl. ¶ 5. Prior to the summer of 2004, Plaintiffs resided in Castle Rock, Colorado. *Id.* ¶ 11. In December 2001, I.L. was referred to the Child Development Unit of Children's Hospital in Denver for a cognitive and emotional assessment. *Id.* ¶ 12. The psychologist performing the assessment recommended that I.L. be placed on a "clear behavior plan," as she had experienced difficulty with aggression continuing from age two through her kindergarten year. *Id.* Individual Education Plans ("IEPs") were developed for I.L. for the 2002–2004 school years at Buffalo Ridge Elementary in Castle Rock. *Id.* ¶ 13. An IEP developed for I.L. on May 5, 2004, prior to the family's move to Iowa, identified her as having significant social and emotional needs. *Id.* ¶ 14.

When I.L.'s family moved to Iowa in 2004, they met with representatives of Waukee School to discuss I.L.'s special education program. *Id.* ¶ 15. Teachers from the Waukee School explained to I.L.'s parents that a student in a functional skills classroom would ordinarily participate in the following: daily oral language; daily oral math; a science-discovery class; lunch; recess; and "specials," including art, music, physical education, and library. *Id.* ¶ 16. After five days, teachers decided that I.L. would need a more advanced program for children with higher academic skills, so I.L. was transferred to Krohn's functional skills classroom. *Id.* ¶ 17.

On September 15, 2004, an interim IEP was developed, pending the results of an

---

1. It appears that the Reply as originally filed was missing pages.

eligibility evaluation. The interim IEP provided that no behavior support plan was necessary; however, during the fall of 2004, I.L. experienced significant behavioral difficulties. *Id.* ¶ 18. In late October and early November 2004, a functional behavior assessment was conducted, comprised of observations from I.L.'s special education classroom. *Id.* ¶ 20. Heartland conducted a full evaluation of eligibility for educational services and issued a report on November 8, 2004. *Id.* ¶ 21. A formal IEP for the 2004–05 school year was developed on November 22, 2004. *Id.*

On December 14, 2004, I.L. was transferred to a new program, though no parental input was solicited before the change. *Id.* ¶ 22. According to the Amended Complaint, the educational program and services specified in I.L.'s IEP were not implemented in the new classroom. *Id.* Data regarding I.L.'s behavior showed increasing difficulties from December 2004 through February 2005, which resulted in five "applications of the hand-over-hand interventions." [2] *Id.* ¶ 23. During one of these interventions, E.L. observed that "some of Defendants were restraining I.L. and that her eyes were glazed, she was screaming and yelling and had urinated during the restraint." *Id.* ¶ 24. Behavioral problems continued into the fall of 2005, and Defendants "used more hand-over-hand restraints, physical body restraints and a 'calming room.'" *Id.* ¶ 27.

On November 18, 2005 a reevaluation IEP was developed. *Id.* ¶ 31. D.L. and E.L. wrote a letter to Principal Snider and Special Educator Brinkmeyer expressing concern over various proposed provisions of the November 18 IEP. A meeting was held on December 2, 2005, and a finalized IEP was developed. *Id.* ¶ 33. On December 7, 2005, I.L. was uncooperative in completing some work and was put into "timeout." [3] The timer was set and reset, eventually resulting in the timeout lasting for 3 hours 12 minutes. *Id.* ¶ 36. The timeout was continued the next morning for another 25 minutes. *Id.* Additional extensive timeouts occurred over the next several days, including a 2 hour 10 minute timeout on December 12, 2005, a 5 hour 10 minute timeout on December 13, 2005, and a 1 hour 16 minute timeout on December 14, 2005. *Id.* ¶¶ 37–38. On December 15, 2005, I.L. was given several timeouts for varying lengths of time and had her lunch taken away. *Id.* ¶ 39. This pattern is alleged to have continued on a day-to-day basis. *Id.* ¶ 40. On January 13, 2006, revisions to the IEP were noted and it was suggested that isolation with immediate timeouts would be appropriate. *Id.* ¶ 41. D.L. expressed his objection to the revisions and stated that he intended to remove I.L. from school with outside support at the Waukee School's expense. *Id.*

E.L. and D.L. filed a complaint and had an administrative hearing conducted in accordance with the procedures provided by the Individuals with Disabilities Education Act ("IDEA"). Pls.' Br. at 17. At this hearing, the administrative law judge provided educational remedies. *Id.* Plaintiffs concede that they received a favorable ruling from the administrative judge. *Id.* at 18. Defendants have appealed the administrative ruling to this Court.[4] Since the filing of the present motion, Defendants' appeal has been decided, and the adminis-

---

**2.** The precise contours of a "hand-over-hand intervention" are not defined in the record presently before the Court.

**3.** According to the Amended Complaint, for purposes of I.L.'s "timeouts," she was placed into a room that had the furniture and other materials removed and the door was closed. Am. Compl. ¶ 36. Additional details of the "timeouts" are not clear from the limited record now before the Court.

**4.** Defendants state the following:

trative ruling affirmed.[5] *See* Case No. 4:07–cv–00278.

Plaintiffs claim that Defendants' conduct toward and treatment of I.L. caused various damages. The Amended Complaint asserts eleven causes of actions: (1) violation of 20 U.S.C. §§ 1414–15,[6] the Individuals with Disabilities Education Act ("IDEA"); (2) denial of substantive and procedural due process in violation of 42 U.S.C. § 1983; (3) denial of equal protection, in violation of 42 U.S.C. § 1983; (4) violation of the Rehabilitation Act ("RA"), 29 U.S.C. § 794; (5) disability discrimination in violation of Iowa Code § 216.9; (6) assault and battery; (7) false imprisonment; (8) intentional infliction of emotional distress; (9) negligent infliction of emotional distress; (10) negligence—bystander; and (11) intentional or reckless infliction of emotional distress—bystander. In the present Motion to Dismiss, Defendants assert that none of Plaintiffs' causes of actions are viable and that each and every count must be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. STANDARDS OF REVIEW

### A. *Federal Rule of Civil Procedure 12(b)(1)*

In order for the Court to dismiss a claim under Federal Rule of Civil Procedure 12(b)(1), the opposing party must successfully challenge the claim "on its face or the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Facial challenges are limited to analyzing the face of the complaint. *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir.2005). Under a facial challenge, each factual allegation concerning jurisdiction is presumed to be true. *Titus*, 4 F.3d at 593. Thus, the moving party's motion can be "successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* Factual challenges invoke facts other than those pled in the complaint. *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir.1990). If a party mounts a factual challenge, "the Court may look outside the pleadings to determine whether jurisdiction exists, and the nonmoving party loses the benefit of favorable inferences from its factual statements." *Dolls, Inc. v. City of Coralville*, 425 F.Supp.2d 958, 970 (S.D.Iowa 2006). Here, Defendants motion to dismiss, to the extent it arises under Rule 12(b)(1), makes a facial challenge, asserting only that the allegations in the Amended Complaint, even if presumed to be true, are insufficient to support jurisdiction.[7]

---

Although Plaintiffs' amended complaint contains no allegations concerning the initiation and exhaustion of administrative remedies, Plaintiffs in fact requested a pre-appeal conference on January 24, 2006 and requested a due process hearing on August 21, 2006. Those proceedings resulted in an administrative law judge's decision filed on March 29, 2008 in Iowa Department of Education Docket # SE–320 that was favorable to Plaintiffs and was appealed by the Waukee Community School District and Heartland AEA to this court and docketed as Case No. 4:07–cv–00278–REL–CFB.
Defs.' Br. in Support of Mot. at 5–6 n. 2.

**5.** Plaintiffs have since moved for recovery of attorneys fees, pursuant to section 1415(f)(3)(B)(i) of IDEA. *See* Case No. 4:07–cv–00278.

**6.** Plaintiffs' Amended Complaint incorrectly references 42 U.S.C. §§ 1414–15, rather than 20 U.S.C. §§ 1414–15.

**7.** With regard to exhaustion of administrative remedies issues, Defendants launch a facial challenge, but in their briefs appear to suggest that there is a factual challenge to the Court's basis for jurisdiction as well. The Court deals with this "factual challenge" in more detail *infra*.

### B. Federal Rule of Civil Procedure 12(b)(6)

In addressing a motion to dismiss under Rule 12(b)(6), this Court must follow the standard of review articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court determined that the standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief[,]" has "earned its retirement." *Twombly,* 127 S.Ct. at 1968, 1969. The Supreme Court held that a viable complaint must now include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 1965. The new standard is not a "heightened fact pleading" requirement, but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 1965, 1974.

Under *Twombly,* as was the case under *Conley,* the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *See id.* at 1964–65; *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997). Moreover, when considering a motion to dismiss for failure to state a claim, a court must accept the facts alleged in the complaint as true, even if doubtful. *See Twombly,* 127 S.Ct. at 1965; *see also Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Thus, a well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely."

*Twombly,* 127 S.Ct. at 1965 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

### III. LEGAL ANALYSIS

#### A. Count I—IDEA

Defendants have moved for dismissal of Count I, claiming that Plaintiffs' IDEA claim requests only unavailable relief. In *Winkelman v. Parma City School District,* the Supreme Court recently described the basic functions and procedures of IDEA. 550 U.S. 516, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007). The Supreme Court identified two goals of IDEA: (1) "ensur[ing] that all children with disabilities have available to them a free appropriate public education"; and (2) "ensur[ing] that the rights of children with disabilities and parents of such children are protected." *Id.* at 2000 (quoting 20 U.S.C. §§ 1400(d)(1)(A)-(B) (2000)). A "free and appropriate public education" consists of "educational instruction 'specially designed ... to meet the unique needs of a child with a disability,' ... coupled with any additional 'related services' that are 'required to assist a child with a disability to benefit from [that instruction].' " *Id.* at 2000–01 (quoting 20 U.S.C. §§ 1401(29); 1401(26)(A); citing § 1401(9)).

The Supreme Court also described the procedural recourse available "[w]hen a party objects to the adequacy of the education provided, the construction of the IEP, or some related matter," as follows:

> [IDEA] requires that a State provide "[a]n opportunity for any party to present a complaint ... with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." § 1415(b)(6). By presenting a

complaint a party is able to pursue a process of review that, as relevant, begins with a preliminary meeting "where the parents of the child discuss their complaint" and the local educational agency "is provided the opportunity to [reach a resolution]." § 1415(f)(1)(B)(i)(IV). If the agency "has not resolved the complaint to the satisfaction of the parents within 30 days," § 1415(f)(1)(B)(ii), the parents may request an "impartial due process hearing," § 1415(f)(1)(A), which must be conducted either by the local educational agency or by the state educational agency, *ibid.*, and where a hearing officer will resolve issues raised in the complaint, § 1415(f)(3).

*Id.* Where the due process hearing is before a local educational agency, rather than the state educational agency, "any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency." 20 U.S.C. § 1415(g)(1). Once the state educational agency reaches a decision, "any party aggrieved" may bring suit in federal court. *See Winkelman,* 127 S.Ct. at 2000 (citing 20 U.S.C. §§ 1415(i)(2)(A); 1415(i)(1)).

Finally, the Court addressed the cost recovery available under IDEA, as follows:

First, in certain circumstances [IDEA] allows a court or hearing officer to require a state agency "to reimburse the parents [of a child with a disability] for the cost of [private school] enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child." § 1412(a)(10)(C)(ii). Second, it sets forth rules governing when and to what extent a court may award attorney's fees. See § 1415(i)(3)(B). Included in this section is a provision allowing an award "to a prevailing party who is the parent of a child with a disability." § 1415(i)(3)(B)(i)(I).

*Id.* at 2001–02. IDEA provides for the payment of attorney's fees as follows: " 'In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorney's fees as part of the costs' to the parents of 'a child with a disability' who is the 'prevailing party.' " *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,* 548 U.S. 291, 297, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006) (quoting 20 U.S.C. § 1415(i)(3)(B)). In addition to reimbursement and attorney's fees, injunctive relief is generally available. *See Light v. Parkway C–2 Sch. Dist.,* 41 F.3d 1223, 1228 (8th Cir.1994) ("Where injury remains substantially likely to result ..., the district court may issue an injunction ordering that the child's placement be changed....").

The Eighth Circuit has endorsed and adopted the Sixth Circuit's view that general and punitive damages are not available under IDEA. *Hoekstra v. Indep. Sch. Dist. No. 283,* 103 F.3d 624, 625–26 (8th Cir.1996) (citing *Heidemann v. Rother,* 84 F.3d 1021 (8th Cir.1996) ("[The] plaintiffs' claims based upon defendants' alleged violations of the IDEA may not be pursued in this § 1983 action because general and punitive damages for the types of injuries alleged by plaintiffs are not available under the IDEA."); *Crocker v. Tennessee Secondary Sch. Athletic Ass'n,* 980 F.2d 382, 386 (6th Cir.1992) ("[W]e do not find case authority interpreting the [IDEA] to allow an award of general damages for emotional injury or injury to a dignitary interest.")). The First Circuit agreed and said: "It is black letter law that ... money damages of any sort ... are not available in a private suit under [ ] IDEA.... 'IDEA's primary purpose is to ensure [a free appropriate public education], not to serve as a tort-like mechanism for compensating personal injury.' " *Diaz–Fonseca v. Puerto Rico,* 451 F.3d 13, 28 (1st Cir.2006) (citations omitted).

■ Here, Plaintiffs impermissibly attempt to use IDEA as a "tort-like mechanism" by seeking compensation for the following: past medical expenses, physical and mental pain and suffering, and loss of enjoyment of life. *See* Am. Compl. ¶ 45. Plaintiffs also seek recovery for "all other elements of loss recoverable under law." *Id.* However, the available remedies under IDEA, discussed above, are limited to the following: an injunction, reimbursement for costs of private enrollment, and reasonable attorney's fees as part of the costs. Plaintiffs do not seek an injunction [8] and allege no facts to suggest they are entitled to the payment of any costs of private enrollment. Accordingly, the only relief ostensibly available is payment of reasonable attorney's fees. However, Plaintiffs cannot request attorney's fees in this action because the Court is presently considering their claim for attorney's fees in conjunction with Defendants' appeal of the administrative decision. *See* Case No. 4:07–cv–00278. Since Plaintiffs cannot and need not recover attorney's fees, or any other amounts, in this action, Defendants' Motion to Dismiss is GRANTED with respect to Count I of the Amended Complaint.

## B. *Counts II and III—42 U.S.C. § 1983*

Defendants move to dismiss Counts II and III because IDEA and the RA (collectively, "the Acts") preclude Plaintiffs' § 1983 claims. Alternatively, they move to dismiss these counts against Heartland and Waukee School (collectively "Institutional Defendants") because the Amended Complaint fails to allege facts sufficient to support liability.

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . .

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. However, the Supreme Court emphasized, in *City of Rancho Palos Verdes v. Abrams,* that § 1983 "does not provide an avenue for relief every time a state actor violates a federal law." 544 U.S. 113, 119, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005). First, a plaintiff must establish a prima facie case by "demonstrat[ing] that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs." *Id.* at 120, 125 S.Ct. 1453. This demonstration establishes a "rebuttable presumption that the right is enforceable under § 1983." *Id.* (quoting *Blessing v. Freestone,* 520 U.S. 329, 341, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997)). The presumption may be rebutted through a demonstration "that Congress did not intend that remedy for a newly created right." *Id.* (citing *Blessing,* 520 U.S. at 341, 117 S.Ct. 1353; *Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)). Congress' intent may be either: (1) "found directly in the statute creating the right" or (2) "inferred from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Id.* (quoting *Blessing,* 520 U.S. at 341, 117 S.Ct. 1353). Here, Defendants apparently concede that Plaintiffs have alleged a prima facie case. However, Defendants' argument, that the Acts are subject to a comprehensive enforcement scheme that demonstrates Congress' intent to preclude § 1983 claims,

---

**8.** No injunction is needed as this Court has already affirmed an administrative decision favoring Plaintiffs. *See* Case. No. 4:07–cv–00278.

presents the following two related issues: (1) whether the Acts preclude § 1983 claims brought to enforce rights secured by the Acts; and (2) whether the Acts preclude § 1983 claims to enforce constitutional rights offended by violations of the Acts.

### 1. The Preclusionary effect of the Rehabilitation Act.

The RA provides, in pertinent part:

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). A "program or activity" includes "a local educational agency ..., system of vocational education, or other school system." 29 U.S.C. § 794(b)(2)(B). To enforce its rules and regulations, the RA adopts the remedial scheme provided by Title VI of the Civil Rights Act of 1964. *See generally* 29 U.S.C. § 794a. The Eighth Circuit has held that "the comprehensive enforcement mechanisms provided under [29 U.S.C. § 794] suggest Congress did not intend violations of those statutes to be also cognizable under § 1983." *Davis v. Francis Howell Sch. Dist.*, 104 F.3d 204, 206 (8th Cir.1997); *see Grey v. Wilburn*, 270 F.3d 607 (8th Cir.2001) (reaffirming *Francis Howell*). Accordingly, the RA ostensibly precludes § 1983 claims, whether founded on violations of the rights provided by the RA or on constitutional violations arising

from RA violations. However, for reasons discussed below, the Court cannot extend the preclusive effect of the RA, described in *Francis Howell*, to a situation where, as here, the alleged conduct violates IDEA in addition to the RA and the Fourteenth Amendment.

### 2. The Preclusionary effect of IDEA.

In *Smith v. Robinson*, the Supreme Court held that the Education of the Handicapped Act ("EHA"), the predecessor to IDEA, provided the exclusive remedy for violations of rights guaranteed by EHA. *Smith*, 468 U.S. at 1013, 104 S.Ct. 3457. Congress responded to *Smith* and amended EHA by adding what is now 20 U.S.C. § 1415(*l*), which provides:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities.

20 U.S.C. § 1415(*l*). Section 1415(*l*) does not state whether the rights created under IDEA are enforceable under § 1983. *See* 20 U.S.C. § 1415.

Since Congress' intent is not found directly in IDEA, the courts must discern its intent by evaluating whether Congress created a "comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *See City of Rancho Palos Verdes*, 544 U.S. at 120, 125 S.Ct. 1453. In addressing this issue, the Courts of Appeal are split.[9] The Eighth Circuit twice has addressed the issue and produced conflicting authority. The Cir-

---

**9.** The First, Third, Fourth, Ninth, and Tenth Circuits have held that violations of IDEA cannot be redressed under 42 U.S.C. § 1983. *See Diaz–Fonseca v. Puerto Rico*, 451 F.3d 13 (1 st Cir.2006); *A.W. v. Jersey City Public Sch.*, 486 F.3d 791 (3d Cir.2007); *Sellers v. Sch.*

*Bd. of Manassas*, 141 F.3d 524 (4th Cir.1998); *Blanchard v. Morton Sch. Dist.*, 504 F.3d 771 (9th Cir.2007), *opinion amended and superseded*, 509 F.3d 934 (9th Cir.2007), *cert. denied*, —— U.S. ——, 128 S.Ct. 1447, 170

cuit first addressed it in *Digre v. Roseville Schools Independent Dist. No. 623*, 841 F.2d 245 (8th Cir.1988), which was decided after the Supreme Court's decision in *Smith* and Congress' amendment of EHA but before IDEA's enactment. *Digre* first explained *Smith's* holding, saying that it barred § 1983 claims arising from violations of EHA and the Equal Protection Clause but allowed claims from violations of the Due Process Clause. *Id.* Next, the court noted the effect of EHA amendment, now section 1415(*l*), saying that it "superseded the holding in *Smith* that a[§ ] 1983 action is not available to enforce [EHA's] substantive rights." *Id.* Accordingly, *Digre* allowed a § 1983 claim "based on alleged violations of [ ] EHA. . . ." *Id.*

However, the Eighth Circuit later denied a similar § 1983 claim in *Heidemann v. Rother*, 84 F.3d 1021 (8th Cir.1996). Curiously, *Heidemann* did not cite *Digre*. Even though IDEA superseded EHA during the time between the two decisions, nothing in *Heidemann* suggests that the statutory change affected the court's reasoning. In *Heidemann*, the court held only that the "defendants' alleged violations of IDEA may not be pursued in [a § 1983 claim] because general and punitive damages for the types of injuries alleged by plaintiffs are not available under [ ] IDEA." *Heidemann*, 84 F.3d at 1033. However, in *Heidemann*, unlike in *Digre*, the alleged violations of IDEA did not also offend the Fourteenth Amendment. Accordingly, the Court reads *Heidemann* as follows: (1) it impliedly overruled *Digre's* holding that § 1983 claims can enforce

rights protected by IDEA; and (2) because no Fourteenth Amendment violations were found, it leaves unanswered whether a § 1983 claim may enforce constitutional rights offended by IDEA violations. For purposes of the present motion, the Court answers the question of whether a § 1983 claim may enforce constitutional rights offended by IDEA violations in the affirmative.

Defendants argue that Plaintiffs' § 1983 claims are wholly unavailable because the same conduct gave rise to the IDEA claim and the constitutionally based § 1983 claims. In support of their argument, Defendants rely on *Grey*, in which the Eighth Circuit addressed claims under § 1983 claims, the ADA, and the RA, but not under IDEA. *See Grey*, 270 F.3d at 607. "[T]he comprehensive enforcement mechanisms provided under . . . the ADA suggest Congress did not intend violations of those statutes to be also cognizable under § 1983." *Francis Howell*, 104 F.3d at 206. The court in *Grey*, relying on *Francis Howell*, refused to recognize a constitutionally based § 1983 claim reliant on the same factual allegations that gave rise to claims under the ADA and RA. *Grey*, 270 F.3d at 610. The court said, "Regardless of how [the plaintiff] styles his claim, the fact remains he alleged no facts to support his 'equal protection' claim other than those set forth in the statutory claims." *Grey*, 270 F.3d at 610. Defendants urge the court to extend *Grey* to constitutionally based § 1983 claims arising from IDEA violations but cite no precedential or persuasive authority for this extension.[10] The

L.Ed.2d 276 (U.S.2008); *Padilla ex rel. Padilla v. Sch. Dist. No. 1 of Denver*, 233 F.3d 1268 (10th Cir.2000). The Second and Seventh Circuits disagree. *See Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d Cir.1987); *Marie O. v. Edgar*, 131 F.3d 610 (7th Cir.1997).

**10.** Defendants cite *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165 (1st Cir.2007), *cert.*

granted —— U.S. ——, 128 S.Ct. 2903, 171 L.Ed.2d 840 (June 9, 2008); *Travis v. Folsom Cordova Unified Sch. Dist.*, No. 2:06–cv–2074, 2007 WL 529840 (E.D.Cal. Feb.20, 2007); and *Alexander v. Underhill*, 416 F.Supp.2d 999 (D.Nev.2006), to support their argument that IDEA's remedial scheme should subsume constitutional claims reliant on facts giving rise to the IDEA claims. These cases were

Court declines to do so because Defendants' interpretation conflicts with *City of Rancho Palos Verdes* and, more importantly, with the plain language of section 1415(*l*).

In *City of Rancho Palos Verdes,* the Supreme Court emphasized that, absent a clear statement of congressional intent, the presumption favoring a § 1983 claim may only be rebutted "by demonstrating that Congress did not intend [the § 1983] remedy for a newly created right." 544 U.S. at 120, 125 S.Ct. 1453. By emphasizing that the rebuttal concerns a remedy for a "newly created" right, the Supreme Court implied that other rights are still enforceable using § 1983. More conclusively, section 1415(*l*) provides that nothing in IDEA "shall be construed to restrict or limit ... remedies available under the Constitution...." 20 U.S.C. § 1415(*l*). The only circuit that has addressed whether IDEA precludes constitutionally based § 1983 claims said, "By preserving rights and remedies 'under the Constitution,' section 1415(f) [11] does permit plaintiffs to resort to § 1983 for constitutional violations, notwithstanding the similarity of such claims to those stated directly under IDEA." *Sellers v. Sch. Bd. of Manassas,* 141 F.3d 524, 530 (4th Cir.1998). Accordingly, the Court understands the weight of persuasive authority to preserve constitutionally based § 1983 claims even if the underlying factual allegations also support an IDEA claim.

■ The Court must now determine, with respect to Plaintiffs' constitutionally based § 1983 claims, whether the preclusive effect of the RA claim "trumps" the non-preclusive effect of the IDEA claim. The Court answers this question in the negative for purposes of the present motion. A contrary decision would allow the

Eighth Circuit's interpretation of the RA to undermine Congress' intent, as demonstrated by section 1415(*l*), to preserve rights and remedies available under the IDEA and RA, as well as under the Constitution.

### 3. *Sufficiency of the Amended Complaint.*

In light of the Court's finding that Plaintiffs' § 1983 claim is not precluded, it must determine whether Plaintiffs have sufficiently stated their claim. To prove a constitutionally based § 1983 claim against either Institutional Defendant, Plaintiffs must demonstrate that the constitutional violation resulted from an action taken pursuant to either "official policy" or "governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell v. Dept. of Social Serv. of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Eighth Circuit has interpreted "official policy" as necessarily involving " 'a deliberate choice to follow a course of action ... made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A by and through Jane Doe B v. Special Sch. Dist. of St. Louis,* 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). By contrast, a "custom" is characterized by "a pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect and force of law." *Id.* at 646 (citing *Monell,* 436 U.S. at 691, 98 S.Ct. 2018). Institutional or agency liability founded on a claim of custom requires proof of the fol-

decided outside the Eighth Circuit and concern Titles VI and IX, not IDEA.

**11.** Since *Sellers,* IDEA has been amended; what was 20 U.S.C. § 1415(f) is now 20 U.S.C. § 1415(*l*).

lowing: (1) a custom or widespread practice exists; (2) "[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct"; and (3) "that the custom was the moving force behind the constitutional violation." *Id.*

■ Applying *Twombly*, this Court must deny Defendants' motion under Rule 12(b)(6) if Plaintiffs included in their complaint "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 127 S.Ct. at 1965. The Amended Complaint alleges that Institutional Defendants: (1) "failed to adequately train and/or negligently trained the individuals responsible for the conduct, resulting in the constitutional violations" (Am.Compl.¶ 53); and (2) were "deliberately indifferent to the constitutional rights of I.L." (Am.Compl.¶ 44). These statements allege enough facts to suggest that discovery could reasonably reveal evidence to support a finding of liability against Institutional Defendants under the standard provided in *Monell.* Since Plaintiffs' constitutionally based § 1983 claims are not precluded and their Amended Complaint satisfied the relevant pleading requirement, Defendants' Motion to Dismiss, with respect to Counts II and III of the Amended Complaint, is DENIED.

### C. *Count IV—Rehabilitation Act*

Defendants move to dismiss Count IV, alleging that: (1) the Court lacks subject-matter jurisdiction over the RA claim because Plaintiffs failed to plead exhaustion of administrative remedies;[12] (2) Plaintiffs failed to state a RA claim for which relief can be granted against all Defendants because the RA entitles Plaintiffs to no greater remedies than IDEA; and (3) Plaintiffs' Amended Complaint fails to allege sufficient facts to state a claim for which relief can be granted against Heartland. Section 504 of the RA prohibits discrimination against certain individuals with disabilities by "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A "program or activity" includes "a local educational agency . . ., system of vocational education, or other school system." *Id.* § 794(b)(2)(B). The RA incorporates the remedies, procedures, and rights of title VI of the Civil Rights Act of 1964. 29 U.S.C. § 794a(2).

■ IDEA permits RA claims arising from IDEA violations. 20 U.S.C. § 1415(*l* ). However, such RA claims cannot proceed to the federal district courts until the parties have exhausted the administrative remedies, as required under IDEA. *See id.* The Eighth Circuit has recognized three exceptions where: (1) exhaustion would be futile; (2) exhaustion would be inadequate; and (3) "an agency policy or practice of general applicability that is contrary to law" has been established. *Blackmon v. Springfield R–XII Sch. Dist.*, 198 F.3d 648, 656 (8th Cir.1999). The Eighth Circuit has described two classes of exhaustion requirements, "jurisdictional" and "non jurisdictional," as follows:

> The Supreme Court has indicated that a statute requiring plaintiffs to exhaust administrative remedies before coming into federal court may be either jurisdic-

12. At various times, Defendants have suggested that Plaintiffs failed to exhaust administrative remedies as a matter of fact. Section 1415(i)(2) of IDEA provides the exhaustion requirement, which applies equally to Plaintiffs and Defendants. Defendants have conceded this Court's subject-matter jurisdiction as a matter of fact when they appealed the administrative decision to this Court. *See* Case No. 4:07–cv–00278. Accordingly, their argument is limited to Plaintiffs' failure to plead exhaustion of administrative remedies, a facial challenge to the Court's jurisdiction.

tional in nature or non jurisdictional, depending on the intent of Congress as evinced by the language used. *See Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Under a jurisdictional statute, exhaustion of administrative remedies cannot be excused or waived and the failure by a party to exhaust is a jurisdictional bar. In contrast, a non jurisdictional statute codifies the common law exhaustion principle under which exhaustion of administrative remedies is favored, but may be excused by a limited number of exceptions to the general rule. *Id.* at 765–66, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522.

*Ace Prop. & Cas. Ins. Co. v. Federal Crop Ins. Corp.*, 440 F.3d 992 (8th Cir.2006). The Seventh Circuit views IDEA's exhaustion requirement as a non jurisdictional requirement because the lack of exhaustion may be waived, whereas lack of subject-matter jurisdiction may not. *See Mosely v. Bd. of Educ. of Chicago*, 434 F.3d 527, 533 (7th Cir.2006). Other circuits addressing the matter disagree.[13] The Eighth Circuit has not yet clarified the law in this area, but has recognized the three exceptions to the exhaustion requirement described in *Blackmon.* Because the Eighth Circuit classifies exhaustion requirements for which exceptions have been recognized as non jurisdictional, the Court finds IDEA's exhaustion requirement to be non jurisdictional. Accordingly, Plaintiffs'

failure to plead exhaustion is not fatal to this Court's subject-matter jurisdiction.[14]

Defendants also contend that the RA claim should be dismissed for want of remedy because the RA provides no greater remedy than IDEA. As discussed, with respect to Count I of the Amended Complaint, Plaintiffs are entitled to no relief in this action under IDEA. The Eighth Circuit has held that money damages are an available remedy under the RA. *Rodgers v. Magnet Cove Pub. Sch.*, 34 F.3d 642 (8th Cir.1994). Accordingly, Plaintiffs' RA claim, if proven, can provide relief unavailable under IDEA.

■ Finally, Defendants contend that Plaintiffs have failed to state an RA claim against Heartland for which relief can be granted because Plaintiffs have only alleged that Waukee School, not Heartland and its agents, participated in the conduct that purportedly violated the RA. They also note, "Under Iowa law ... area education agencies[, like Heartland,] provide special education services to local school districts, not directly to their pupils." Def.'s Br. in Support of Mot. at 13. The Court must deny the Motion if the complaint includes "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." *See Twombly*, 127 S.Ct. at 1965. If Plaintiffs successfully prove that Heartland intentionally deprived I.L. of the benefits of a federally funded program based on her disability, then they could recover under the RA. *See* 29 U.S.C.

---

**13.** The Second Circuit has consistently held that where a plaintiff fails to exhaust administrative remedies, the court lacks subject-matter jurisdiction. *See Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240 (2d Cir. 2008); *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768 (2d Cir.2002); *Polera v. Bd. of Educ. of Newburgh*, 288 F.3d 478 (2d Cir.2002). The Fourth, Ninth, and Tenth Circuits have reached the same conclusions. *See M.M. v. Sch. Dist. of Greenville County*, 303 F.3d 523 (4th Cir.2002); *Witte v. Clark County Sch.*

*Dist.*, 197 F.3d 1271 (9th Cir.1999); *Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262 (10th Cir.2007).

**14.** Alternatively, because it is clear to the Court that the parties have exhausted administrative remedies as a matter of fact, as discussed in footnote 8, *supra,* the Court hereby grants Plaintiffs leave to amend their complaint to plead exhaustion of administrative remedies.

§ 794(a). In the Amended Complaint, Plaintiffs allege the following: (1) Defendants, Rankin and McKevitt, "at times pertinent hereto residents of Iowa (McKevitt is now a resident of Nebraska), were employees of Heartland AEA responsible for the completion and implementation of the educational plans for I.L." (Am. Compl.¶ 10); and (2) the revised IEP proposed isolation (Am.Compl.¶ 32). These statements are sufficient to support an RA claim against Heartland at this early stage of the proceedings. For the foregoing reasons, Defendants' Motion to Dismiss, with respect to Count IV of the Amended Complaint, is DENIED.

### D. *Count V—Disability Discrimination*

Defendants argue that Plaintiffs' claim in Count V, for disability discrimination in violation of the Iowa Civil Rights Act ("ICRA"), Iowa Code § 216.9, fails as a matter of law because Plaintiffs have failed to exhaust their administrative remedies prior to bringing suit. The ICRA provides: "A person claiming to be aggrieved by an unfair or discriminatory practice must initially seek an administrative relief by filing a complaint with the commission in accordance with section 216.15." Iowa Code § 216.16(1) (2005).

While Plaintiffs disagree that the present Motion to Dismiss is the proper vehicle for determining the exhaustion of administrative remedies question, they nonetheless "concede the issue" of exhaustion under the ICRA "in the interests of judicial efficiency." Pls.' Resistance at 3. Accordingly, Defendants' Motion to Dismiss is GRANTED with respect to Count V of the Amended Complaint.

### E. *Counts VI (Assault & Battery) and VII (False Imprisonment)*

Defendants contend that the state-law torts alleged in Counts VI and VII fail against all defendants, alleging that the state-law tort remedies are preempted by the ICRA's remedies and, further, that the torts have been subsumed in the educational context by Iowa Code § 280.21, which governs corporal punishment in schools. Alternatively, they argue that Plaintiffs have failed to allege any act or omission made by either party related to Counts VI and VII. Defendants' first argument fails because, given the Court's determination that the ICRA claim should be dismissed for failure to exhaust administrative remedies, Plaintiffs no longer seek damages under the ICRA in this action. Accordingly, the basis for Defendants' preemption argument is no longer present in this case. The Court addresses only the two remaining arguments here.

The Court must first determine whether the Iowa corporal punishment statute subsumes Plaintiffs' tort claims. The statute, Iowa Code § 280.21, provides generally, "An employee of an accredited public school district, accredited nonpublic school, or area education agency shall not inflict, or cause to be inflicted, corporal punishment upon a student." Iowa Code § 280.21(1). Section 280.21(2) provides a safe-harbor to shield teachers from liability, as follows:

A school employee who, in the reasonable course of the employee's employment responsibilities, comes into physical contact with a student shall be granted immunity from *any civil or criminal liability* which might otherwise be incurred or imposed as a result of such physical contact, if the physical contact is reasonable under the circumstances and involves the following:

    a. Encouraging, supporting, or disciplining the student.

    b. Protecting the employee, the student, or other students.

    c. Obtaining possession of a weapon or other dangerous object within a student's control.

d. Protecting employee, student, or school property.

e. Quelling a disturbance or preventing an act threatening physical harm to any person.

f. Removing a disruptive student from class or any area of the school premises, or from school-sponsored activities off school premises.

g. Preventing a student from the self-infliction of harm.

h. Self-defense.

i. Any other legitimate educational activity.

Iowa Code § 280.21(2) (emphasis added). The reference in the statute to "any civil or criminal liability" demonstrates the legislature's intent to provide certain safe-harbors within which a teacher may have physical contact with a student. However, it leaves undisturbed the underlying body of law which could give rise to liability absent the safe-harbors. Accordingly, the Court finds that § 280.21 does not subsume the torts alleged in Counts VI and VII but rather may serve as an affirmative defense to the torts alleged. Whether such affirmative defense is available in the present case turns on whether the alleged contact was made "in the reasonable course of the employee's employment responsibilities." At this point, the Court is without sufficient information to determine whether the contact was reasonable as a matter of law.

Finally, the Court must address whether these allegations state a claim against Heartland and its agents. Plaintiffs, in reply to the Motion, contend that Heart-land could be liable because Heartland or its agents engaged in the conduct alleged in the Amended Complaint. Plaintiffs, in their brief, emphasize their Amended Complaint's allegation that Heartland or its agents actually engaged in the conduct giving rise to the torts alleged in Counts VI and VII.[15] This allegation is sufficient to state a claim for which relief can be granted, as the Plaintiffs have asserted sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 127 S.Ct. at 1965, 1974. For the foregoing reasons, the Defendants' Motion to Dismiss is DENIED with respect to Counts VI and VII of the Amended Complaint.

### F. Counts VIII (Intentional Infliction of Emotional Distress) and IX (Negligent Infliction of Emotional Distress)

■ Defendants repeat their argument that the ICRA has subsumed the state-law torts, with respect to Counts VIII and IX. It fails here for the reasons described in the discussion of Counts VI and VII, above. However, Defendants further argue that the tort alleged in Count IX is not recognized under Iowa law as a viable claim in the context of a student in an educational environment. It is well-settled law in Iowa that, "[u]nder the tort theory of negligence, there is no general duty of care to avoid causing emotional harm to another." *Clark v. Estate of Rice*, 653 N.W.2d 166, 171 (Iowa 2002). However, there are two exceptions in cases involving the following: (1) "bystander liability based on the breach of a duty of care

---

**15.** Iowa Code § 280.21(3) provides in pertinent part: "Any school employee determined in a civil action to have been wrongfully accused under this section shall be awarded reasonable monetary damages, in light of the circumstances involved, against the party bringing the action." Defendants suggest that the Court should interpret Plaintiffs' Amended Complaint so as to remove allega-tions that could give rise to a counterclaim under § 280.21(3). While the Court cannot alter Plaintiffs' clear allegations based on the assumption that Plaintiffs would not risk a counterclaim, it notes here the possibility of such a claim under § 280.21(3) if a school employee is found to have been "wrongfully accused."

by the defendant not to cause emotional distress to those who witness conduct that causes serious harm to a close relative"; and (2) "direct victims of emotional distress." *Id.* at 170–71. The second exception is implicated "when the nature of the relationship between the plaintiff and the defendant is such that it supports the imposition of a duty of care on the defendant to avoid causing emotional harm to the plaintiff." *Id.* at 171. The Iowa Supreme Court has held that liability for negligent infliction of emotional distress is limited to situations where both of the following are present: (1) a contractual relationship; and (2) dealings that "involve deep emotional responses in the event of a breach." *Id.* Here, Plaintiffs concede that no contractual relationship exists but requests the Court nonetheless find the claim contained in Count IX cognizable. In light of the clear limitations delineated by the Iowa Supreme Court, this Court cannot accept Plaintiffs' invitation to extend the doctrine of negligent infliction of emotional distress to the classroom. Therefore, Defendants' Motion to Dismiss is DENIED with respect to Count VIII and GRANTED with respect to Count IX of the Amended Complaint.

G. *Counts X (Negligence—Bystander) and XI (Intentional or Reckless Infliction of Emotional Distress—Bystander)*

In Count X of Plaintiffs' Amended Complaint, Plaintiffs allege that D.L. and E.L. witnessed some of the Defendants' actions either in person or through videotape, that the Defendants' actions were negligent, and that D.L. and E.L. experienced serious emotional distress as a result. In Count XI of the Amended Complaint, Plaintiffs allege that D.L. and E.L. witnessed some of the Defendants' actions either in person or through videotape, that the Defendants' actions were willful or unlawful, and that D.L. and E.L. experienced

serious emotional distress as a result. It appears that Plaintiffs' claims in both counts arise from two separate factual scenarios. First, E.L. purportedly witnessed, in person, "the final minutes" of a "hand-over-hand intervention," wherein she saw that "some of the Defendants were restraining I.L. and that her eyes were glazed, she was screaming and yelling and had urinated during the restraint." Am. Compl. ¶ 24. Second, D.L. and E.L. both allegedly witnessed some actions of Defendants in dealing with I.L. on videotape, after their occurrence. For Plaintiffs to succeed on their claim of emotional distress to a bystander caused by witnessing peril to a victim proximately caused by the negligence or intentional actions of another, they must establish:

1. The bystander was located near the scene of the accident.

2. The emotional distress resulted from a direct emotional impact from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

3. The bystander and the victim were husband and wife or related within the second degree of consanguinity or affinity.

4. A reasonable person in the position of the bystander would believe, and the bystander did believe, that the direct victim of the accident would be seriously injured or killed.

5. The emotional distress to the bystander must be serious.

*Barnhill v. Davis,* 300 N.W.2d 104, 108 (Iowa 1981).

With regard to Plaintiffs' claim that E.L. personally witnessed the restraint of I.L., Defendants argue that Plaintiffs cannot satisfy the fourth element of the prima facie case, that is, Plaintiffs cannot demon-

strate that a reasonable person in the position of E.L. would believe, and that E.L. actually did believe, that I.L. would be seriously injured or killed by the restraint. Plaintiffs counter that the I.L. had glazed eyes, was screaming and yelling, and had urinated in her pants, all indicators that could lead a reasonable person to believe that I.L. was about to be, or had been, seriously injured. The Court finds that, as pleaded, the Plaintiffs have asserted sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 127 S.Ct. at 1965, 1974.

To the extent that the claims in Counts X and XI arise from E.L. and D.L. witnessing a videotape of I.L. being restrained, however, the Court agrees with Defendants that Plaintiffs cannot satisfy the first and second elements of a prima facie case. Defendants point out that the first two elements of the prima facie case require that the bystander be "located near the scene" and that any emotional harm result from the "sensory and contemporaneous observance" of the tortfeasor's act, and that a videotaped observation cannot satisfy either of these requirements. Plaintiff argues that these two elements are designed to address foreseeability of harm, and that in circumstances such as the present ones, "where an educator actually showed a parent the video tape of the abusive restraint, the likelihood of emotional harm to the viewer is highly foreseeable." Pls.' Br. at 66. Thus, Plaintiffs argue that a videotape of the incident "simulates" the requirements of the first two prima facie elements, and that the Court should permit the claims to stand.

■ Iowa courts have "strictly limited" bystander claims for emotional distress to situations where the "plaintiff [is] a bystander and witness[es] the peril of the related victim, and . . . the emotional dis-

tress result[s] 'from a direct emotional impact from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.'" *Fineran v. Pickett*, 465 N.W.2d 662, 664 (Iowa 1991); *Oberreuter v. Orion Indus., Inc.*, 342 N.W.2d 492, 494 (Iowa 1984) (quoting *Barnhill*, 300 N.W.2d at 108). Indeed, the *Oberreuter* court observed that recovery for bystander emotional distress is "intended to compensate plaintiff not for the grief that flows from a loved one's tortious injury, but for the emotional trauma caused by plaintiff's visceral participation in the event." *Oberreuter*, 342 N.W.2d at 494 ("It is the added horror of witnessing (and probably endlessly reliving) the tragedy that is compensable, other *Barnhill* elements being present."). Moreover, the Iowa Supreme Court has emphasized that the requirements of geographic nearness and *contemporaneous perception* are "required to ensure that plaintiff will have been subjected to the added shock required to sustain the cause of action. . . . To eliminate them now as requirements for recovery would surely launch 'a first excursion into the fantastic realm of infinite liability.'" *Id.* (quoting *Madigan v. City of Santa Ana*, 145 Cal. App.3d 607, 611, 193 Cal.Rptr. 593 (Cal. Ct.App.1983)). This Court declines to launch such an excursion here. Therefore, Defendants' Motion, with respect to Counts X and XI of the Amended Complaint, is GRANTED IN PART, insofar as Plaintiffs seek recovery for emotional distress caused by viewing the videotape, and DENIED IN PART, insofar as E.L. seeks recovery for distress caused by viewing I.L.'s actual physical restraint.

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss (Clerk's No. 15) is GRANTED with respect to Counts I, V, and IX of the Amended Complaint; DE-

NIED with respect to Counts II, III, IV, VI, VII, and VIII; and GRANTED IN PART and DENIED IN PART, with respect to Counts X and XI.

IT IS SO ORDERED.