Sharon DIGRE, for herself and as parent and next friend on behalf of Sean Digre, a minor, Appellant,

v.

ROSEVILLE SCHOOLS INDEPENDENT DISTRICT NO. 623, Appellee.

No. 87–5119.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1987.

Decided March 9, 1988.

Gayle Gaumer, Edina, Minn., for appellant.

Christine M. Scotillo, Minneapolis, Minn., for appellee.

Before HEANEY, WOLLMAN, and MAGILL, Circuit Judges.

WOLLMAN, Circuit Judge.

Sharon Digre, for herself and as parent and next friend of Sean Digre, brought this 42 U.S.C. § 1983 action [1] to enjoin Roseville Schools Independent District No. 623 (Roseville or school district) from placing Sean in a special education program pending a determination of his proper educational status at a state administrative due process hearing. Mrs. Digre alleged that the school district's attempt to place Sean in special education violated the Education of the Handicapped Act, 20 U.S.C. § 1400 et seq., the related Minnesota handicapped children statute, Minn.Stat. § 120.17(3b)(i), and the due process clause of the fourteenth amendment. The district court [2] denied injunctive relief. We affirm.

Congress enacted the Education of the Handicapped Act (the Act or EHA), Pub.L. No. 91–230 § 601, 84 Stat. 175 (codified as amended at 20 U.S.C. § 1400 et seq. (1982)), to remedy the inadequacy of educational services provided to handicapped children. "When the law was passed in 1975, * * * 21 years after [the Supreme] Court declared education to be 'perhaps the most important function of state and local governments,' *Brown v. Board of Education*, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954), * * * better than half of the Nation's eight million disabled children were not receiving appropriate educational services." *Honig v. Doe*, —— U.S. ——, 108 S.Ct. 592, 596, 98 L.Ed.2d 686 (1988). Seriously emotionally disturbed children who require special education and related services are included in the Act's definition of handicapped children. 20 U.S.C. § 1401(a)(1) (Supp. I 1983). "Congressional statistics revealed that for the school year immediately preceding passage of the Act, the educational needs of 82 percent of all children with emotional disabilities went

unmet." *Honig v. Doe*, 108 S.Ct. at 596–97, *citing* S.Rep. No. 168, 94th Cong., 1st Sess. 8 (1975), *reprinted in* 1975 U.S.Code Cong. & Admin.News 1425, 1432.

As a condition of federal financial assistance, a state must implement "a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1) (1982). An individualized education program (IEP), setting out the child's educational performance, establishing annual objectives, and describing the educational program designed to enable the child to meet those objectives, must be prepared for each handicapped child. *Id.* § 1401(19). The school district must "mainstream," i.e., educate handicapped children in the regular class setting, to the maximum extent appropriate. *Id.* § 1412(5).

In addition to these substantive rights, the Act establishes a comprehensive system of procedural safeguards to guarantee parents direct participation in the decisions concerning the education of their handicapped children. *Id.* § 1415. Parents have a right to examine all relevant records concerning the evaluation and educational placement of their child, *id.* § 1415(b)(1)(A); to receive prior written notice whenever the school district proposes or refuses to change the child's placement, *id.* § 1415(b)(1)(C), and to receive an impartial due process hearing after registering a complaint on any matter relating to the school district's provision of a free appropriate education. *Id.* §§ 1415(b)(1)(E), (2). Both the parents and the school district may seek administrative review of the hearing. *Id.* § 1415(c). Finally, either party dissatisfied with the final results of the administrative process may file a civil action in state or federal court. *Id.* § 1415(e)(2).

---

**1.** Initially, we must address a jurisdictional issue. Mrs. Digre filed a motion for a preliminary injunction but never filed a complaint, believing that the EHA requires a plaintiff to exhaust state administrative due process procedures prior to bringing an action. We will construe her motion for a preliminary injunc-

tion as a complaint and allow her to appeal from the district court's denial of her motion.

**2.** The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

Because the review process is often lengthy, section 1415(e)(3) provides for an automatic preliminary injunction during the pendency of the proceedings. *See also* 34 C.F.R. § 300.513 (1982). Section 1415(e)(3) states:

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, *the child shall remain in the then current educational placement of such child,* or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed. (emphasis added)

This so-called "stay-put" provision is at issue in this case.

Sean Digre is a young boy of above average intelligence who demonstrated behavioral disorders in public school. Sean's parents were divorced and he lived with his mother. Because Sean was not completing his assignments, Sean's sixth grade teacher referred him to the school district's child study team. A psychologist and a teacher of the emotionally/behaviorally disordered conducted an assessment of Sean. They found that Sean was excessively active, did not conform well to rules and regulations, was argumentative with peers, and did not actively interact with adults. Subsequently, an IEP team, which included Mrs. Digre, met to discuss the assessment and possible changes in Sean's educational program. Although Mrs. Digre was initially reluctant to classify Sean as a handicapped child, she consented to special education in May 1985. Thereafter, the school district conducted periodic assessments of Sean to establish his special education needs.

On January 28, 1986, Mrs. Digre approved an annual IEP that placed Sean in Level IV special education, with one half of each day spent in specialized classes and the remainder mainstreamed. Sean was transferred from his neighborhood school to the Developmental Center at Capital View Middle School. By March 1986, however, it was apparent that Sean was not responding to his special education program, and the school district recommended an even more structured environment. Mrs. Digre objected, stating that Sean had been misdiagnosed as a handicapped child and that he should be in regular classes. In response, the school district modified Sean's IEP to allow him to attend regular education classes as a special education student. During a periodic review of Sean's special education status in May 1986, the school district recommended that when Sean entered the eighth grade in the fall he be fully mainstreamed as a special education student on a trial basis and that the school district conduct an assessment to determine whether Sean should be permanently mainstreamed.

Sean did not return to Roseville in the fall. Instead, he went to live with his father and enrolled in the Eden Prairie school system. Because this was Sean's initial placement at Eden Prairie, he was placed in regular education. When Eden Prairie received Sean's records from Roseville, however, it unsuccessfully sought Sean's parents' permission to assess Sean for a possible special education placement. After being enrolled at Eden Prairie approximately one month, Sean returned to his mother's custody. In December 1986, Mrs. Digre attempted to reenroll Sean in Roseville as a regular education student, but the school district asserted its right to continue Sean's Level IV special education program. Mrs. Digre insisted that Sean was transfering from Eden Prairie as a regular education student. She also refused to consent to the planned assessment. The school district offered to place Sean in all mainstream classes at Capital View, provided that Mrs. Digre consent to an assessment. Mrs. Digre rejected the school district's offer. On January 28, 1987, Mrs. Digre filed a motion in district court for a preliminary injunction to enjoin the school district from placing Sean in special education. She claimed that the school district changed Sean's educational status without affording her an opportunity for a hearing, in violation of due process and the stay-put provision of the EHA. Two days later she requested an adminis-

trative due process hearing. Sean has not attended public school since he left Eden Prairie.

### I.

 On appeal from the district court's denial of her motion, Mrs. Digre argues that the court erred in concluding that a 42 U.S.C. § 1983 action is not available to remedy violations of the EHA or the due process clause of the fourteenth amendment. We agree. A section 1983 action lies when a defendant acting under color of state law violates a right secured by the Constitution or federal laws. *Watertown Equip. Co. v. Norwest Bank, Watertown, N.A.*, 830 F.2d 1487, 1489 (8th Cir.1987). It encompasses claims based on purely statutory violations of federal laws. *Maine v. Thiboutot*, 448 U.S. 1, 5–6, 100 S.Ct. 2502, 2504–05, 65 L.Ed.2d 555 (1980). An exception to this general rule exists when a comprehensive remedial scheme evidences a congressional intent to foreclose resort to section 1983 to remedy statutory violations. *Wright v. City of Roanoke Redevelopment & Housing Auth.*, 479 U.S. 418, 107 S.Ct. 766, 771, 93 L.Ed.2d 781 (1987); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981).

In *Smith v. Robinson*, 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984), the Supreme Court analyzed the EHA's extensive remedial scheme and concluded that Congress intended to preclude reliance on section 1983 for violations of the EHA or an equal protection claim to a publicly financed special education. The court, however, distinguished a due process challenge and suggested that "unlike an independent equal protection claim, maintenance of an independent due process challenge to state procedures would not be inconsistent with the EHA's comprehensive scheme." *Id.* at 1014–15 n. 17, 104 S.Ct. at 3469 n. 17. We have held that a due process challenge under section 1983 to procedures local and state agencies employ in an EHA context is permitted. *Miener v. State of Missouri*, 800 F.2d 749, 755 (8th Cir.1986) (challenging Missouri's administrative procedures); *Rose v. State of Nebraska*, 748 F.2d 1258, 1263 (8th Cir.1984) (challenging partiality of hearing officer), *cert. denied sub nom. Lutjeharms v. Rose*, 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 50 (1985). *See also Robinson v. Pinderhughes*, 810 F.2d 1270, 1275 (4th Cir.1987) (finding that plaintiff entitled to rely on section 1983 when city school system failed to implement favorable decision by local hearing officer within time limit); *Manecke v. School Bd. of Pinellas County*, 762 F.2d 912, 918 (11th Cir.1985) (holding that where party denied due process because school board failed to provide timely, impartial hearing, relief available under section 1983); *cert. denied*, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986).

The district court quoted *Smith v. Robinson*, 468 U.S. at 1013, 104 S.Ct. at 3469, for the proposition that "where the EHA is available to a handicapped child asserting a right to a free appropriate education * * * the EHA is the exclusive avenue through which the child and his parents or guardian can pursue their claim." Mem.Op. at 5. The court concluded that Mrs. Digre's only claim could be for a violation of the EHA itself. The court erred in failing to recognize that the above-quoted language referred only to an equal protection claim and did not preclude Mrs. Digre's due process challenge to the procedures the school district employed.

Moreover, in response to *Smith*, Congress "acted swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as a judicial misinterpretation of its intent." *Fontenot v. Louisiana Bd. of Elementary & Secondary Educ.*, 805 F.2d 1222, 1223 (5th Cir.1986). Congress amended the Act in 1986 to state specifically that the EHA is not the exclusive avenue through which parents may enforce the rights of their handicapped children. *See* The Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372 § 3, 100 Stat. 796 (1986) (to be codified at 20 U.S.C. § 1415). Subsection 1415(f) provides:

Nothing in this chapter shall be construed to restrict or limit the rights, pro-

cedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [20 U.S.C.A. § 790, et seq.], or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C.A. § 1415(f) (West Supp.1987).

This amendment supersedes the holding in *Smith* that a section 1983 action is not available to enforce the Act's substantive rights. *Mrs. W. v. Tirozzi*, 832 F.2d 748, 754 (2d Cir.1987). "[Section] 1415(f) was designed to 'reestablish statutory rights repealed by the U.S. Supreme Court in *Smith v. Robinson*' and to 'reaffirm, in light of this decision, the viability of section 504, 42 U.S.C. 1983, and other statutes as separate vehicles for ensuring the rights of handicapped children.'" *Mrs. W. v. Tirozzi*, 832 F.2d at 754–55, *citing* H.R.Rep. No. 296, 99th Cong., 1st Sess. 4 (1985). Thus, Mrs. Digre was entitled to bring a section 1983 action based on alleged violations of the EHA or the due process and equal protection clauses of the fourteenth amendment.

## II.

■ Although Mrs. Digre understood that the Act did not preclude a 42 U.S.C. § 1983 action, she assumed that she could not file a complaint in district court until she had exhausted her administrative remedies. The district court correctly stated that although the ultimate dispute over Sean's proper educational program and whether another assessment of Sean should be conducted must be decided in the administrative due process proceedings,[3] federal courts have the authority to enter preliminary injunctions determining the placement of children during the pendency of state proceedings. For example, in *Honig v. Doe*, a federal district court enjoined the school district from expelling two emotionally disabled students pending a determination by an IEP team that the pupils' disruptive behavior was a manifestation of their handicaps. The students had a right to remain in their current educational placement during the administrative proceedings. *Honig v. Doe*, 108 S.Ct. at 604. *See also Smith v. Robinson*, 468 U.S. at 1008, 104 S.Ct. at 3466 (attorney fee award for efforts to obtain an injunction ordering school committee to maintain student's placement throughout course of subsequent proceedings assumed proper); *Stacey G. v. Pasadena Indep. School Dist.*, 695 F.2d 949, 955 (5th Cir.1983) (district court granted preliminary injunctive relief during pendency of proceedings).

■ Turning to the merits, the parties disagree over Sean's "then current educational placement" when he returned to Roseville in December 1986. Mrs. Digre contends that Sean was in regular education because he transferred as a regular education student from Eden Prairie. Also, Roseville's most recent periodic review recommended that Sean be fully mainstreamed. Mrs. Digre therefore asserts that the school district's attempt to place Sean in special education constituted a change in Sean's status prior to a due process hearing, in violation of section 1415(e)(3). The school district responds that Sean's initial placement at Eden Prairie is not dispositive. Sean was a continuing student at Roseville in Level IV special education, and although Sean was mainstreamed as a special education student on a trial basis, a permanent placement in regular education was contingent on the results of an assessment.

---

**3.** Congress specified three situations in which exhaustion of the administrative remedies set forth in sections 1415(b)(2) and (c) is not a prequisite. If

 (1) it would be futile to use the due process procedure; (2) the agency has adopted a policy or pursued a practice of general applicabil-

ity that is contrary to law; (3) it is improbable *that adequate relief can be obtained by* pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought).

*Mrs. W. v. Tirozzi*, 832 F.2d at 756, *citing* 1985 House Report, *supra*.

We agree with the school district that Sean's "then current educational placement" when he reenrolled in Roseville in December 1986 was the annual Level IV special education that Mrs. Digre had approved in February 1986. Although the Level IV program involved mainstreaming Sean into regular education classes as a special education student, Roseville had not taken Sean out of the special education program. Sean's initial placement during his one-month stay at Eden Prairie as a regular education student does not negate his history as a special education student at Roseville. We therefore hold that Roseville School did not violate 20 U.S.C. § 1415(e)(3) (1982) or 42 U.S.C. § 1983 (1982) by placing Sean in special education when he reenrolled in Roseville during the pendency of a due process hearing to determine his proper educational placement.

### III.

Our conclusion that the school district did not violate the stay-put provision by attempting to place Sean in special education does not prevent Mrs. Digre from invoking the general equitable powers of the district court under section 1415(e)(2) to grant preliminary injunctive relief to protect Sean from irreparable harm. *Honig v. Doe,* 108 S.Ct. at 606. Mrs. Digre argues that placing Sean in special education pending a determination of his proper educational program will irreparably harm Sean by subjecting him to an inappropriate education and stigmatizing him as a handicapped child. The district court applied the four-part test announced in *Dataphase Systems, Inc. v. CL Systems, Inc.* 640 F.2d 109, 113 (8th Cir.1981) (en banc),[4] and correctly determined that Mrs. Digre had not established a claim for equitable relief. Although the school district has not offered to return Sean to his neighborhood school, it has offered to place Sean in all regular education classes pending an assessment. Because Mrs. Digre maintains that Sean should be in regular education, we fail to see how Sean could be irreparably harmed by the school's proposal.

The judgment is affirmed.

---

4. "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. CL Systems, Inc.,* 640 F.2d at 113.