# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3426

_____

| | | |
|---|---|---|
| Barry and Kimberly Barron, for themselves, on behalf of D.B. and N.B., their minor children; Joel and Deanne Curran, for themselves, on behalf of J.C. and A.C., their minor children; Leo Willey and Jennifer Dans-Willey, for themselves, on behalf of S.W. and T.W., their minor children; Cindy Sparks, for herself, on behalf of K.S., her minor child; Timothy and Teresa Nold, for themselves, on behalf of I.N., their minor child, and other parents and children so similarly situated; | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | |
| | * | Appeal from the United States |
| | * | District Court for the |
| | * | District of South Dakota. |
| | * | |
| Plaintiffs/Appellants, | * | |
| | * | |
| v. | * | |
| South Dakota Board of Regents; Dr. Robert Tad Perry, in his individual capacity as former Director for the South Dakota Board of Regents; Dr. Jack Warner, in his individual capacity Director for the South Dakota Board of Regents, | *<br>*<br>*<br>*<br>*<br>*<br>*<br>* | |
| | * | |
| Defendants/Appellees. | * | |

_____

Submitted: May 11, 2011
Filed: September 9, 2011

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The plaintiffs, parents of deaf and hearing impaired children (the parents), brought suit against the South Dakota Board of Regents (the Board), Dr. Robert Perry, and Dr. Jack Warner (collectively, the defendants), claiming that the closure of the South Dakota School for the Deaf (the school) and the discontinuation of its programs at the school's campus violated state and federal law. The complaint sought, among other things, class certification and an order enjoining the closure of the school and the outsourcing of its programs to other school districts. The parents appeal from the district court's[1] order granting summary judgment in favor of the defendants. We affirm.

## I. Background

The school was established in Sioux Falls, South Dakota in 1880. The South Dakota Constitution was adopted in 1889. Section 1 of article XIV provided, "The charitable and penal institutions of the State of South Dakota shall consist of a penitentiary, insane hospital, a school for the deaf and dumb, a school for the blind and a reform school." A constitutional amendment was approved in 1944 that removed the school for the deaf from section 1's list of institutions. See S.D. Const. art. XIV, § 1, historical note. Section 1 now reads, "The charitable and penal institutions of the State of South Dakota shall consist of a penitentiary, a hospital for the mentally ill, a school for the developmentally disabled, and a reform school for juveniles."

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

In 2008, the governor of South Dakota appointed a task force to study and make recommendations about the "effectiveness and efficiency of the educational services provided in South Dakota for deaf and hard of hearing students." At that time, the school offered two educational platforms: the bilingual-bicultural program, which focused on educating students using American Sign Language, and the auditory-oral program, which focused on educating students who use cochlear implants or other assistive hearing devices. The named plaintiffs in this lawsuit are parents of students who were enrolled in the bilingual-bicultural program or who sought to be enrolled in the program.[2]

The task force held four hearings and received testimony from twenty-six people, including parents, faculty, administrators, members of the deaf community, deaf education experts, and previous superintendents of the school. The task force issued its report to the governor in November 2008. Its findings revealed changes in the demographics of educational placement of deaf and hard-of-hearing students in South Dakota. Specifically, of the 398 children with hearing impairments identified at the beginning of the 2008-2009 school year, only thirty-two attended classes at the school's campus, only six of whom were enrolled in middle or high school. The thirty-two students represented eight percent of the hearing impaired students in South Dakota, yet ninety-one percent of the school's budget was allocated to the school's Sioux Falls-based activities. The task force recommended that the school change its mission to focus on outreach programs and services.

In January 2009, Terry Gregersen, the school's superintendent, was advised by Perry, then the executive director of the Board, that the proposed budget for the school

---

[2]The district court ruled that any claims brought on behalf of students who had left the school and attended another school district without first requesting a due process hearing for alleged violations of the IDEA have become moot. We agree. See C.N. v. Willmar Pub. Sch., 591 F.3d 624, 630-32 (8th Cir. 2010); Smith ex rel. Townsend v. Special Sch. Dist., No. 1, 184 F.3d 764, 767 (8th Cir. 1999).

had been cut by $2 million. By letter dated January 22, 2009, Gregersen informed the students' parents, "Today, the Governor presented his revised budget for Fiscal Year 2010, in which he recommends redefining the mission of the South Dakota School for the Deaf to an outreach education and support role. This means we will not offer an instructional program on the Sioux Falls campus starting next fall." The letter went on to note that the school was "committed to provide IEP [Individualized Education Program] meetings this spring with the local education agencies to ease this transition."

By May 2009, the Board had entered into a two-year agreement with the Brandon Valley School District for the education of elementary and preschool students in an auditory-oral program.[3] The Brandon Valley School District program hired two instructors and obtained certain equipment from the school's auditory-oral program. According to the agenda for the May 2010 Board meeting, the school sought to enter a similar services agreement with the Harrisburg School District for a bilingual program for deaf or profoundly hearing-impaired children.[4] The agenda further noted that "SDSD retains in its budget sufficient funds to cover tuition expenses for a limited number of students, on a first come first serve basis, in the event that home-school districts and families conclude that certain children would benefit most from a traditional deaf education program in a residential institution setting."

In July 2009, the parents of eight deaf or hard-of-hearing children brought this putative class-action lawsuit, seeking to represent a class of "[a]ll deaf or hard of hearing children who are residents of South Dakota under the age of 21, and their parents or legal guardians." Compl. ¶ 39. The complaint alleged four causes of

---

[3]The auditory-oral program is offered at the Fred Assam Elementary School, located approximately three miles from the school's campus.

[4]Harrisburg is approximately ten miles south of the school's campus. The administrative offices for both programs are located at the school's campus.

-4-

action. Counts one and two alleged that the defendants' decision to discontinue offering programs at the school's campus and to move those programs to other school districts violated South Dakota law and the Individuals with Disabilities Education Act (IDEA). Count three pled a declaratory judgment action, claiming that the parents' due process rights were violated because the "decision to terminate services at SDSD and out-source such services to Brandon Valley constitutes a change to the IEP's for the affected students." Id. ¶ 60. Count four alleged a civil-rights action under 42 U.S.C. § 1983, claiming that the defendants had violated the IDEA and the parents' right to due process.[5]

The parents moved for a preliminary injunction, seeking to enjoin the Board from refusing to admit eligible students to the school, from discontinuing the services offered at the school's campus, from outsourcing its services to Brandon Valley School District, and from pursuing an outreach-based agenda. With their motion, the parents submitted six affidavits describing their children's experiences at the school. The Board opposed the motion and moved to dismiss the complaint for failure to state a claim upon which relief may be granted, see Fed. R. Civ. P. 12(b)(6).

The district court held a status conference, during which it inquired whether the plaintiffs were required to exhaust their administrative remedies and advised that it would resolve the exhaustion issue before further case scheduling occurred. Thereafter, the parents filed their opposition to the motion to dismiss, along with affidavits supporting both their opposition and their motion for a preliminary injunction. Following numerous other filings, the district court converted the motion to dismiss into a motion for summary judgment and granted judgment in favor of the defendants. This appeal followed.

---

[5]With respect to the § 1983 claim, the parents have appealed only from the determination that qualified immunity shielded Perry and Warner from suit. The parents have not appealed from the grant of summary judgment in favor of the Board.

## II. Analysis

### A. Motion for Summary Judgment

The parents contend that the district court erred in converting the defendants' motion to dismiss to a motion for summary judgment. Federal Rule of Civil Procedure 12(d) requires that a motion to dismiss under Rule 12(b)(6) be treated as a motion for summary judgment under Rule 56 if "matters outside the pleadings are presented and not excluded by the court." Rule 12(d) further provides that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

"[A] party against whom this procedure is used (here, the plaintiffs) is normally entitled to notice that conversion is occurring." Country Club Estates, L.L.C. v. Town of Loma Linda, 213 F.3d 1001, 1005 (8th Cir. 2000). The district court is not necessarily required to give affirmative notice: "[C]onstructive notice that the court intends to consider matters outside of the complaint can be sufficient." Id. (citing Angel v. Williams, 12 F.3d 786, 788 (8th Cir. 1993)). The court's consideration of such evidence "is harmless where the nonmoving party had an adequate opportunity to respond to the motion and material facts were neither disputed nor missing from the record." BJC Health Sys. v. Colum. Cas. Co., 348 F.3d 685, 688 (8th Cir. 2003) (internal quotation omitted).

The parents were well aware that the district court intended to consider matters outside of the complaint. They attached six affidavits to their motion for a preliminary injunction and asked the court to consider those affidavits in ruling on defendants' motion to dismiss. They also submitted two additional affidavits with their opposition papers. Moreover, the parents have not identified any disputed facts that are material to the disposition of this case. We thus conclude that the parents had sufficient notice that the motion to dismiss would be treated as a motion for summary judgment. We will therefore review *de novo* the district court's grant of summary judgment in favor

of the defendants.  See Cedar Rapids Cmty. Sch. Dist. v. Garret F., 106 F.3d 822, 824 (8th Cir. 1997) (standard of review).

## B.  Violation of the IDEA

The parents' primary argument is that the Board's decision to discontinue offering educational programs at the school's campus, and instead offer only outreach services, violated the IDEA, 20 U.S.C. § 1400 *et seq*.  Ordinarily, the IDEA requires a plaintiff to exhaust administrative remedies before bringing a lawsuit in federal court, see § 1415(i), which the parents did not do.  The parents claimed that exhaustion was not required, however, because it would be futile, the changes to the school were systemic, and adequate relief could not be obtained by pursuing the administrative remedies.  See Honig v. Doe, 484 U.S. 305, 326-27 (1988) ("It is true that judicial review is normally not available under § 1415(e)(2) until all administrative proceedings are completed, but as we have previously noted, parents may bypass the administrative process where exhaustion would be futile or inadequate.").  At oral argument, the defendants conceded that an administrative law judge could not order the Board to reestablish the educational programs at the school's Sioux Falls campus.

We conclude that the parents were not required to exhaust because, if their position was well founded and the Board's actions violated the IDEA, adequate relief likely could not have been obtained through the administrative process.  See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir. 2002) (citing H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)) ("Congress specified that exhaustion is not necessary if . . . it is improbable that adequate relief can be obtained by pursuing administrative remedies."); Digre v. Roseville Sch. Indep. Dist. No. 623, 841 F.2d 245, 250 n.3 (8th Cir. 1988).  Although the school is subject to the IDEA, see 34 C.F.R. 300.2(b)(iii), South Dakota's administrative rules contemplate that a school district, not the Board, be the local education agency subject to the administrative procedures.  S.D. Admin. R. 24:05:15:05 (entitled, "Complaint against

a school district"); 24:05:21:01 ("Each local education agency must have a current comprehensive plan approved by the school board on file with the district superintendent or designee."); 24:05:30:07.01 ("A parent or a school district may file a due process complaint on any matters relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child."); 24:05:30:10.01 ("Nothing in this section precludes a hearing officer from ordering a district to comply with procedural requirements under this chapter."). We agree with the district court that "[i]n consideration of the administrative scheme, and as a practical matter, it may be more than improbable that a hearing officer could ultimately enforce an order to the Board of Regents to reverse its policy of cutting programs at the school's physical location and out-sourcing services to home school districts." D. Ct. Order of Sept. 30, 2010, at 13. Accordingly, we will consider the parents' cause of action under the IDEA.

The IDEA seeks to "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). "States accepting federal funding under the IDEA must provide a disabled student with a free appropriate public education." Neosho R-V Sch. Dist. v. Clark, 315 F.3d 1022, 1026 (8th Cir. 2003) (internal quotation omitted); see also 20 U.S.C. § 1412(a)(1). "A child receives a free appropriate public education if he receives 'personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction.'" T.F. v. Special Sch. Dist. of St. Louis Cnty., 449 F.3d 816, 820 (8th Cir. 2006) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 203 (1982)). The IDEA's "free appropriate public education" requirement sets a floor of educational opportunity: "[T]he Supreme Court has made it clear that the Act does not require states to make available the *best* possible option." Springdale Sch. Dist. #50 v. Grace, 693 F.2d 41, 43 (8th Cir. 1982).

The IDEA also requires that students with disabilities be educated in the least restrictive environment. 20 U.S.C. § 1412(a)(5). The statute includes a strong preference in favor of educating children with disabilities with children who are not disabled. Id. Because South Dakota receives federal funding under the IDEA, it must ensure that:

> To the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

§ 1412(a)(5)(A).

The parents contend that the least restrictive environment for deaf students is a school of their own. Accordingly, they argue that the defendants violated the IDEA and denied students a free appropriate public education when they discontinued offering educational programs at the school's campus. The parents views regarding deaf-education policy is not without support, see, e.g., Caroline Jackson, Note, The Individuals with Disabilities Education Act and Its Impact on the Deaf Community, 6 Stan. J. C.R. & C.L. 355 (2010), but the IDEA calls for disabled children to be educated with nondisabled children "[t]o the maximum extent appropriate" and for separate schooling only when education in regular classes "cannot be achieved satisfactorily." § 1412(a)(5)(A); see also Evans v. Dist. No. 17, 841 F.2d 824, 832 (8th Cir. 1988) ("[C]hildren who can be mainstreamed should be mainstreamed, if not for the entire day, then for part of the day; similarly, children should be provided with an education close to their home, and residential placements should be resorted to only if these attempts fail or are plainly untenable."). The IDEA's integrated-classroom preference makes no exception for deaf students.

The parents contend that there exists a genuine issue of material fact whether a free appropriate public education could be offered in the absence of a school for the deaf. The parents have not alleged that their children are not "benefit[ting] educationally" in the programs and schools in which they are currently enrolled. See Rowley, 458 U.S. at 203. The complaint explains that the students would prefer to attend programs at the school's campus and that the parents would prefer to enroll their children in a separate, language-rich school. Although it is arguable that a stand-alone school for the deaf might provide the best education for their children, the state is not required to make available the "best possible option." See Springdale Sch. Dist. #50, 693 F.2d at 43 (emphasis omitted). Thus the parents have failed to allege facts to support their claim that the school's discontinuation of educational programs at the Sioux Falls campus violated the IDEA.

Furthermore, to the extent the parents have alleged that the Board violated the IDEA's procedural safeguards, they have given no reason why the notice provided by the school was inadequate. We thus conclude that the district court properly granted summary judgment in favor of the defendants on the IDEA cause of action.

## C. Section 1983 Claim

The parents contend that Perry and Werner, sued in their individual capacities as the former and current executive director for the Board, are subject to liability under 42 U.S.C. § 1983 for violating the parents' due process rights. See Digre, 841 F.2d at 249-50 (holding that a plaintiff may bring a § 1983 action based on alleged violations of the Education of the Handicapped Act, 29 U.S.C. 1400 *et seq.* (1982)). The parents have failed to establish a violation of the IDEA, however, and have failed to point us to any facts supporting their claim that their constitutional rights were violated. Accordingly, their § 1983 cause of action fails.

D.  Standing To Sue on Behalf of Students in the Auditory-Oral Program

The parents do not have standing to bring the third count alleged in the complaint—that the decision to move the auditory-oral program to the Brandon Valley School District violated the plaintiffs' due process rights.  "The doctrine of standing limits the jurisdiction of federal courts to 'those disputes which are appropriately resolved through the judicial process.'"  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  To invoke the jurisdiction of a federal court, "a plaintiff must present a 'case' or 'controversy' within the meaning of Article III of the Constitution."  Id.  To meet the "irreducible constitutional minimum of standing," the plaintiffs must show that they have suffered an "injury in fact" that is "fairly traceable to the challenged action of the defendant," and "likely to be redressed by a favorable decision."  Id. (quoting Lujan, 504 U.S. at 560-61) (alterations omitted).

We conclude that the parents cannot show an "injury in fact" with respect to the third count.  Although the parents have alleged a due process violation, none of them had children enrolled in the auditory-oral program at the school's campus during the 2008-2009 school year and none had children who were scheduled to participate in the program for the 2009-2010 school year.  "Article III generally requires injury to the plaintiff's personal legal interest."  Braden, 588 F.3d at 591.

That the parents have brought a putative class action lawsuit cannot save the due-process claim on behalf of the auditory-oral students, who are not part of this law suit.  "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."  O'Shea v. Littleton, 414 U.S. 488, 494 (1974); see Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam) ("Absent standing to bring the claim in her own right, [the plaintiff] is not eligible to represent a class of persons raising the same claim.").  We thus conclude that judgment in favor of the defendants was appropriate on this count, as well.

### E. Violation of South Dakota Constitution and Statutes

Finally, the parents argue that South Dakota's constitution, statutes, and common law require that the Board provide educational programs at the school's campus. As set forth more fully below, we conclude that the Board's actions did not violate South Dakota law.

As recounted earlier, in 1889 section 1 of article XIV of the South Dakota Constitution provided that the state's charitable institutions "shall consist of . . . a school for the deaf . . . ." The 1944 constitutional amendment removed the school for the deaf from section 1 and placed the school under the control of the Board. See S.D. Const. art. XIV, §§ 1, 3. As amended, section 1 cannot be construed to require a full-service education for deaf students at the Sioux Falls campus for the school for the deaf. See Kneip v. Herseth, 214 N.W.2d 93, 100 (S.D. 1974) ("Even though an amendment does not expressly repeal a constitutional provision, yet, if it rewrites and covers the same subject provided for in such provision the amendment will supersede and be regarded as a substitute therefor."). Thus, the parents' argument to the contrary must fail.

The South Dakota Constitution places the school for the deaf "under the control" of the Board. S.D. Const. art. XIV, § 3. We look to the state statutes to determine the extent of the Board's control because "the general scope of the powers of the board as to courses of study and the kind, type or nature of the school that shall, in fact, be maintained, are limited by the foundation purpose of the school as prescribed by the Legislature." State ex. rel Bryant v. Dolan, 249 N.W. 923, 924 (S.D. 1933) (quoting State ex rel. Prchal v. Daily, 234 N.W. 45, 52 (S.D. 1931) (Campbell, J., concurring)); see Kanaly v. State ex rel. Janklow, 368 N.W. 2d 819, 825 (S.D. 1985) (noting that the Board's "control is subject to constitutionally authorized legislative rules and restrictions" (internal quotation omitted)). Thus, the educational institution's "curriculum must conform to the character and purpose of the school." Prchal, 234 N.W. at 47.

The legislature has given the Board the power to "govern and regulate each institution under its control in such manner as it deems best calculated to promote the purpose for which the institution is maintained." S.D. Codified Laws § 13-49-13. South Dakota Codified Laws section 13-62-1 provides that the "State School for the Deaf, located at Sioux Falls, in Minnehaha County, shall be under the control of the Board of Regents and so maintained and managed as to afford an appropriate education to those entitled to its benefits." Section 13-62-6 sets forth the eligibility requirements for the school's programs: "All persons under twenty-one years of age, whose hearing impairment precludes successful educational benefits of public schools, who are residents of the state, and capable of receiving instruction are eligible for programs provided by the state school for the deaf." These statutes do not preclude the Board from affording an appropriate education to eligible students on an outreach basis or through its service agreements with other school districts. Similarly, section 13-33B-3, which requires that the school be considered when determining the placement of a deaf or hard-of-hearing student, does not mandate that educational programs be offered at the school's campus. We thus conclude that it was within the Board's power to discontinue offering educational programs at the school's campus, in favor of contracting with other school districts to offer those programs and maintaining funds in its budgets for students to attend residential programs.

Conclusion

The judgment is affirmed.

_____